David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN TAYLOR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>8POINT3 ENERGY PARTNERS LP, CHARLES D. BOYNTON, MARK R. WIDMAR, NATALIE F JACKSON, ALEX BRADLEY, THOMAS C. O'CONNOR, NORMAN J. SZYDLOWSKI, and MICHAEL W. YACKIRA,<br><br>Defendants. | Civil Action No.  18-cv-1989<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff John Taylor ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the Class A common shares of 8point3 Energy Partners LP[1] ("8point3

---

[1]      Simplified, 8point3 Energy is primarily held by three entities. Class A public shareholders ("shareholders"), First Solar, Inc. ("First Solar"), and SunPower Corporation ("SunPower" and together with First Solar, the "Sponsors").

Energy" or the "Company") against 8point3 Energy and the members of the Partnership's board of directors (collectively, the "Board" or "Individual Defendants," and, together with 8point3 Energy, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Item 1015, 17 C.F.R. 229.1015, in connection with the proposed acquisition (the "Proposed Transaction") of 8point3 Energy, and its affiliates, by Capital Dynamics, Inc., through its affiliates and certain other co-investors (collectively, "Capital Dynamics").

2.     On February 5, 2018, the Board caused the Partnership to enter into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which each common share of 8point3 Energy will be converted into the right to receive $12.35 per share (the "Buyout Price").

3.     On March 19, 2018, in order to convince 8point3 Energy's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for 8point3 Energy; (ii) the valuation analyses performed by 8point3 Energy's financial advisor, Evercore Group L.L.C. ("Evercore"), in support of its fairness opinion; (iii) information relating to the Background of the Merger; and (iv) potential conflicts of interest faced by the financial advisors.

5.     The special meeting of 8point3 Energy shareholders to vote on the Proposed Transaction is forthcoming.  It is imperative that the material information that has been omitted from the Proxy is disclosed to the Partnership's shareholders prior to the shareholder vote so that they can properly exercise their corporate suffrage rights.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Item 1015.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed

Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to 8point3 Energy's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) 8point3 Energy maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.      Plaintiffs is, and at all relevant times has been, a shareholder of 8point3 Energy.

11.      Defendant 8point3 Energy is a Delaware limited partnership and maintains its principal executive offices at 77 Rio Robles, San Jose, California 95134.  The Partnership owns, operates, and acquires solar energy generation projects. 8point3 Energy common shares are listed and traded on the NASDAQ under the ticker symbol "CAFD."

12.     Individual Defendant Charles D. Boynton is a director of 8point3 Energy and is the Chairman of the Board and Chief Executive Officer of the Partnership.

13.     Individual Defendant Mark R. Widmar is, and has been at all relevant times, a director of the Partnership.

14.     Individual Defendant Natalie F Jackson is, and has been at all relevant times, a director of the Partnership.

15.     Individual Defendant Alex Bradley is, and has been at all relevant times, a director of the Partnership.

16.     Individual Defendant Thomas C. O'Connor is, and has been at all relevant times, a director of the Partnership.

17.     Individual Defendant Norman J. Szydlowski, and has been at all relevant times, a director of the Partnership.

18.     Individual Defendant Michael W. Yackira is, and has been at all relevant times, a director of the Partnership.

19.     The parties identified in paragraphs 11-18 are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of 8point3 Energy (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

21.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of March 19, 2018, there were 28,093,305 8point3 Energy common shares outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of 8point3 Energy will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

> i)      whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;
>
> ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and
>
> iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

1
2
3

## SUBSTANTIVE ALLEGATIONS

4

**I.      Background to the Proposed Transaction and the Deal Announcement**

5

A.      Parties to the Proposed Transaction

6          22.      8point3 Energy, incorporated on March 3, 2015, owns, operates, and acquires

7   solar energy generation projects. As of November 30, 2016, the Partnership's portfolio consisted

8   of interests in 642 Megawatt (MW) of solar energy projects. The Partnership is developing

9   projects under utility, commercial and industrial (C&I), and residential categories. As of

10  November 30, 2016, the Partnership owned interests in nine utility-scale solar energy projects,

11  four C&I solar energy projects, and a portfolio of residential Distributed generation (DG) Solar

12  assets. The Partnership's utility-scale and C&I project sells its energy output under long-term,

13  fixed-price offtake agreements and its residential portfolios comprises solar installations, which

14  are leased to homeowners under a fixed monthly rate. The Partnership's utility project portfolio

15  comprises projects, including Maryland Solar, Solar Gen 2, Lost Hills Blackwell, North Star,

16  RPU, Quinto, Hooper, and Kingbird. The Partnership's C&I projects comprise UC Davis, Macy's

17  California, Macy's Maryland, and Kern. The Partnership's residential portfolio targets

18  homeowners in the United States.

19          23.      First Solar, incorporated on May 15, 2003, is a provider of photovoltaic (PV)

20  solar energy solutions. The Company designs, manufactures, and sells PV solar modules with a

21  thin-film semiconductor technology. The Company also develops, designs, constructs, and sells

22  PV solar power systems that primarily use the modules it manufactures. It operates through two

23  segments: components and systems. The components segment is engaged in the design,

24  manufacture, and sale of cadmium telluride (CdTe) solar modules, which convert sunlight into

25  electricity. The systems segment includes the development, construction, operation, and

26  maintenance of PV solar power systems, which primarily use its solar modules. In addition, the

27
28

Company provides operations and maintenance (O&M) services to system owners that use solar modules manufactured by it or by third-party manufacturers.

24.     SunPower, incorporated on May 25, 2004, is a global energy company. The Company delivers complete solar solutions to residential, commercial, and power plant customers. The Company's segments include Residential Segment, Commercial Segment, and Power Plant Segment. The Residential and Commercial Segments combined are referred to as Distributed Generation. The Company offers solar module technology and solar power systems that are designed to generate electricity over a system life over 25 years; Integrated Smart Energy software solutions that enable customers to manage and optimize the cooperation center of excellence (CCOE) measurement; Installation, construction, and ongoing maintenance and monitoring services; and financing solutions that provide customers a range of options for purchasing or leasing solar products at competitive energy rates.

25.     Below is an organizational chart which helps clarify 8point3 Energy's structure:



26.     Capital Dynamics is an asset management and private equity fund specializing in direct, fund of funds, and secondary investments. Under direct investments, it makes growth and buyout investments. It seeks to invest in mid-market companies in clean energy and infrastructure with a focus on clean energy technologies such as solar, wind, biomass, geothermal, small hydro, landfill gas, conventional cogeneration, waste gas fueled power generation, technology and business services, consumer, healthcare, financial services, and industrials sectors. Under fund of funds investments, the firm invests in venture capital, distressed, mezzanine, emerging managers, secondary investment funds, real estate funds, private equity funds, buyout funds, and special situation funds. It seeks to invest in clean energy companies across the globe. It invests in the United States, Brazil, and Asia with a focus on China, and Europe.

B.     The Unfair Procession of the Deal

27.     The Proposed Transaction was the result of First Solar's urgent need for liquidity. However, while conducting the sales process, Defendants discovered that the only market for the sale of First Solar's interest in the Partnership was a sale of all three Partnership components—First Solar's interest, SunPower's interest, and the public shareholder's interest. Accordingly, Defendants agreed to the Proposed Transaction, at a below market price, to benefit the Sponsors at the expense of the shareholders.

28.     On June 19, 2017, the Sponsors reached an agreement pursuant to which First Solar would pay SunPower additional consideration from its portion of the $12.35 Buyout Price. The effect of this agreement is that First Solar will receive an aggregate of approximately $242.8 million (or $10.98 per OpCo Unit) and SunPower will receive an aggregate of approximately $387.1 million (or $13.40 per OpCo Unit). Thus, First Solar incentivized Sunpower to agree to a below market value for shareholders. First Solar would receive its liquidity and SunPower would receive consideration greater than that of the shareholders.

29.     On November 28, 2017, 8point3 Energy's conflicts committee (the "Conflicts Committee")[2] held a meeting with representatives of Evercore to discuss the Proposed Transaction. Following discussion, the Conflicts Committee determined to propose to the Sponsors that the shareholders receive $15.00 per Class A share in the Proposed Transaction with a corresponding reduction to the amount to be received by the Sponsors in the event that Capital Dynamics was not prepared to increase its offer price from $12.35.

30.     On December 11, 2017, Defendant Boynton, after discussion with representatives of each of the Sponsors, informed Defendant O'Connor that the Sponsors were not willing to provide the public holders of Class A shares with any additional consideration on a per Class A share basis

31.     On December 20, 2017, the Conflicts Committee held another meeting with Evercore to discuss the Proposed Transaction. Following extensive discussion, the Conflicts Committee concluded that the Sponsors would not agree to allocate additional consideration to shareholders as part of the transaction and that the per Class A share price offered by Capital Dynamics was likely going to be more attractive to the public holders of Class A shares than no transaction.

32.     On January 16, 2018, the Conflicts Committee met once again with Evercore to discuss the Proposed Transaction. Following the discussion, the Conflicts Committee decided to propose to the Sponsors that shareholders would receive consideration that was equivalent to the consideration that SunPower would be receiving.

33.     On January 19, 2018, Boynton responded that the Sponsors were unwilling to compensate shareholders on an equal basis to SunPower.

---

[2]     The Conflicts Committee consists of the three independent directors not employed by either Sponsor: Thomas C. O'Connor, Norman J. Szydlowski and Michael W. Yackira.

34.     On January 25, 2018, the Conflicts Committee met once more with representatives of Evercore to discuss the Proposed Transaction.  Following discussion, the Conflicts Committee determined that O'Connor should again contact Boynton and discuss the Conflicts Committee's request that shareholders receive consideration that is no lower than the consideration that SunPower will receive.

35.     Boynton immediately refused and stated that the Sponsors would not allocate *any* consideration to shareholders above the $12.35 Buyout Price.

36.     The Committee met one final time, on February 5, 2018, and approved the Proposed Transaction, despite knowing that the Buyout Price was extremely inadequate and would cost shareholders tens of millions of dollars—evinced by their repeated, failed efforts to extract greater consideration from the Sponsors. Thus, the deal was finalized and the Proposed Transaction was announced.

C.     Deal Announcement

37.     On February 5, 2018, 8point3 Energy issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**8point3 Enters into a Definitive Agreement to be Acquired by Capital Dynamics**
*Announces Fourth Quarter and Fiscal Year 2017 Results*

SAN JOSE, CA, February 5, 2018 - 8point3 Energy Partners LP (NASDAQ:CAFD) ("8point3" or the "Partnership") today announced it has entered into an Agreement and Plan of Merger and Purchase Agreement (the "Merger Agreement") with CD Clean Energy and Infrastructure V JV, LLC, an investment fund managed by Capital Dynamics, Inc., and certain other co-investors (collectively, "Capital Dynamics"), pursuant to which Capital Dynamics will acquire 8point3 through an acquisition of 8point3 General Partner, LLC (the "General Partner"), the general partner of the Partnership (such transaction, the "GP Transfer"), all of the outstanding Class A shares in the Partnership and all of the outstanding common and subordinated shares and incentive distribution rights in 8point3 Operating Company, LLC ("OpCo"), the Partnership's operating company (the "Proposed Transactions").

Pursuant to the Proposed Transactions, the Partnership's Class A shareholders and First Solar, Inc. (NASDAQ: FSLR)("First Solar") and SunPower Corporation (NASDAQ: SPWR) ("SunPower" and,

**CLASS ACTION COMPLAINT**

together with First Solar, the "Sponsors"), as holders of common and subordinated shares in OpCo, will receive $12.35 per share or per share in cash, plus a preset daily amount representing cash expected to be generated from December 1, 2017 through closing less any distributions received after the execution of the Merger Agreement and prior to closing. No consideration will be received by the Sponsors for the incentive distribution rights and the GP Transfer.

•Proposed Transactions represent ~$977 million in equity value and ~$1.7 billion in enterprise value
•Culmination of an extensive and competitive marketing process with >130 parties contacted
•Committed debt financing secured by Capital Dynamics enhances certainty of closing the Proposed Transactions
•Proposed Transactions unanimously approved by the Conflicts Committee of the Board of Directors of 8point3 (the "Conflicts Committee") and approved by the Board of Directors of the General Partner as well as the Boards of Directors of First Solar and SunPower
•Proposed Transactions expected to close in second fiscal quarter or third fiscal quarter of 2018

The completion of the Proposed Transactions is subject to a number of closing conditions, including approval by a majority of the outstanding 8point3 public Class A shareholders, the expiration of the waiting period under the Hart-Scott-Rodino (HSR) Antitrust Improvements Act of 1976, Federal Energy Regulatory Commission (FERC) Section 203 approval and the approval of the Committee on Foreign Investment in the United States (CFIUS). The Sponsors, which are the indirect owners of our General Partner and approximately 64.5 percent of OpCo's outstanding shares, have executed an agreement to vote in support of the Proposed Transactions. Additionally, the Proposed Transactions are subject to certain other customary closing conditions.

"The Partnership announced today that the Sponsors' strategic review has concluded with the signing of a definitive agreement for the Partnership to be acquired by Capital Dynamics," said Chuck Boynton, CEO of 8point3. "This transaction is the culmination of a thorough and comprehensive strategic review process that determined that Capital Dynamics's offer was the most compelling proposal for all shareholders relative to other options, including the option to continue as a stand-alone company."

The Partnership was formed to be a growth-oriented limited partnership, owning, operating and acquiring solar energy generation projects, with the primary objective of generating predictable cash distributions that grow at a sustainable rate. The Partnership intended to achieve this objective by acquiring high-quality solar assets primarily developed by its Sponsors.

**CLASS ACTION COMPLAINT**

For the last several quarters, the ability of the Partnership to execute on its growth strategy has been very limited.  The evolving nature of the solar industry has enabled the Sponsors' strategies of recycling capital faster and more efficiently by selling projects at a stage of construction and development that is earlier than best suited for the Partnership.  In addition, the Partnership's higher cost of capital and difficulty in accessing the capital markets on a consistent basis resulted in several replacements of projects under the Right of First Offer (ROFO) arrangements, as well as the Partnership later waiving its rights to acquire a number of ROFO projects from the Sponsors, with such waived projects subsequently acquired by third party buyers at purchase prices higher than those offered to the Partnership. These challenges, among others, present strategic and financial implications for the Partnership's operations and prospects as a stand-alone public company without the Sponsors, and its resulting competitive position in the market for renewable energy assets.

Goldman Sachs is acting as financial advisor to SunPower, BofA Merrill Lynch is acting as financial advisor to First Solar, and Evercore is acting as financial advisor to the Conflicts Committee. Baker Botts L.L.P. is acting as legal counsel to SunPower, Skadden, Arps, Slate, Meagher & Flom, LLP is acting as legal counsel to First Solar and Richards, Layton & Finger P.A. is acting as legal counsel to the Conflicts Committee.

Fourth Quarter 2017 Results
The Partnership also announced its fourth quarter and fiscal year 2017 results. 8point3 reported revenue of $15.8 million and $70.1 million, net income of $8.8 million and $39.2 million, Adjusted EBITDA of $26.2 million and $121.3 million, and cash available for distribution (CAFD) of $37.8 million and $111.9 million, respectively.

The Board of Directors of the General Partner also declared a cash distribution for its Class A shares of $0.2802 per share for the fourth quarter, which was paid January 12, 2018 to shareholders of record on January 2, 2018.

The Partnership did not utilize its $125 million at-the-market (ATM) equity offering program during the fourth quarter of fiscal year 2017.

Guidance
The Partnership's first quarter 2018 guidance is as follows: revenue of $9.0 million to $10.0 million, net income of $1.5 million to $3.5 million, Adjusted EBITDA of $7.5 million to $9.5 million, CAFD of $14.5 million to $16.5 million and a distribution of $0.2802 per share. The Partnership's first quarter 2018 guidance includes approximately $3.0 million in expenses related to the

Proposed Transactions and approximately $12.3 million tax benefit from the Tax Cuts and Jobs Act signed into law on December 22, 2017.

**CLASS ACTION COMPLAINT**

1
2
3

During the pendency of the Proposed Transactions, we intend to make quarterly distributions of $0.2802 per share, which maintains the distribution level at the end of the fiscal year ended November 30, 2017.

4    **II.    The Inadequate Buyout Price**

5    38.    The Buyout Price radically undervalues 8point3 Energy, and is the result of a

6    severely flawed sales process that put the interests of the Sponsors ahead of value for the

7    shareholders.

8    39.    On February 2, 2018, the Friday before the Monday deal announcement, shares of

9    8point3 Energy closed at $14.29. On the morning of February 6, the shares opened at $12.35.

10   Therefore, by agreeing to the Buyout Price and announcing it publicly, Defendants instantly

11   caused the Partnership's public shareholders to lose over $50,000,000—nearly 14% of their

12   share value—as illustrated by the chart below:

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**CLASS ACTION COMPLAINT**

40.     The announcement of the derisibly low Buyout Price came as a shock to both shareholders and the market. As recently as January 8, 2018, 8point3 Energy shares were trading at $15.90, a nearly 30% premium to the Buyout Price. In the year leading up to the Buyout Price, the Partnership had consistently announced positive financial results, and increased share value by 5.85%.

41.     On April 4, 2017, 8point 3 Energy announced that the Partnership exceeded expected financial results, and discussed the Sponsors' decision to orchestrate a sales process, with Defendant Boynton stating:

42.

> 8point3's strong operating performance over the last two years has shown that owning a portfolio of high-quality solar assets can successfully generate long-term, stable cash flow growth for investors.  Despite the sponsors' review of alternatives with respect to their interests in the Partnership, I want to assure our investors that we do not expect this process to have an impact on our financial results for the year.  Given our cash flow profile, we are well positioned to achieve our guidance for the year as well as reach our 12 percent distribution growth rate for 2017

43.     The good news continued up until the deal announcement. On June 9, 2017, the Partnership announced that they increased Second Quarter Distribution by 3.0 percent over First Quarter Distribution, and exceeded Q2 2017 revenue, net income, Adjusted EBITDA, and CAFD guidance. On October 4, 2017 the Partnership announced that they increased Third Quarter Distribution by 3.0 percent over Second Quarter Distribution and exceeded Q3 2017 revenue, net income, Adjusted EBITDA, and CAFD guidance. As a result of its consistent asset performance, the Partnership raised its fiscal year 2017 guidance.

44.     On March 28, 2018, the Partnership once again announced positive financial results. They exceeded Q1 2018 revenue, net income, Adjusted EBITDA, and CAFD guidance and declared Q1 2018 distribution of $0.2802 per share. Defendant Boynton stated, "We remain pleased with the performance of our high quality solar portfolio as we exceeded our financial

goals for the quarter." With 8point3 Energy's CFO adding, "We remain well-positioned to meet our second quarter financial and operational goals."

45.     Wall Street analysts agreed that the Partnership was a successful business. Each of JP Morgan, Baird, and Goldman Sachs maintained a $16.00 per share price target for 8point3 Engery up until the deal announcement. Yet the Buyout Price came in at $12.35.

46.     When a business sells below its trading value it is referred to as a "takeunder." Takeunders usually only occur when the target business is failing, or in severe financial distress. Otherwise, mergers and acquisitions regularly provide significant premiums to their shareholders. Given, recent success of the Partnership, their robust financials, and their strong economic outlook, it does not make sense for the Buyout Price to be so low.

47.     In sum, the Buyout Price undervalues 8point3 Energy shares to the tune of tens of millions of dollars. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to vote in favor of the Proposed Transaction.

## III.   The Proxy Is Materially Incomplete and Misleading

48.     On March 19, 2018, 8point3 Energy filed the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Partnership's shareholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Partnership's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Partnership's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

49.     First, the Proxy fails to provide the full range of financial metrics utilized by Evercore in rendering their fairness opinion. Specifically, the Proxy omits research analyst estimates for the Partnership's future financial performance on a standalone basis, levered free

cash flows, the Merchant Price Curve Sensitivity projections, the Generation Sensitivity projections, and the estimated 2018 – 2022 average implied dividend per share from the 8point3 Financial Projections – Base Case. Evercore explicitly utilized these financial metrics to value the Partnership and derive the fairness of the Proposed Transaction. As such, their disclosure is material to 8point3 Energy shareholders.

50.     The projected per share dividends are especially important to 8point3 shareholders. In the *Peer Group Trading Analysis*, Evercore applied dividend yield references from selected comparable companies to both the dividend per share announced on December 20, 2017 and the to the projected per share dividends. When the dividend yield reference range was applied to the announced dividend per share the resulting share value was $14.01 to $22.42, substantially above the Buyout Price. However, when the dividend yield reference range was applied to "estimated" dividends, the per share value went down to $11.66 per share to $18.66, barely fitting the Buyout Price within the range. This represents a stark downward shift in value, all while the Partnership continues to report positive financial results. Given this dramatic devaluation, the omission of the estimated dividend yields renders the fairness of the Buyout Price materially misleading.

51.     The omission of the above financial metrics renders the financial projections included in the Proxy materially incomplete and misleading. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

52.     With respect to Evercore's *Discounted Cash Flow* Analyses, the Proxy fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the calculation of the *Levered Discounted Free Cash Flow Analysis* discount rate range of 6.0% to 8.0%; (ii) the inputs and assumptions underlying the calculation of the

**CLASS ACTION COMPLAINT**

*Unlevered Discounted Free Cash Flow Analysis* discount rate range of 5.0% to 7.0%; and (iii) the various terminal values calculated, including the inputs and assumptions underlying their calculation.

53.   These key inputs are material to 8point3 Energy shareholders, and their omission renders the summary of Evercore's *Discounted Cash Flow* Analyses incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).   Such choices include "the appropriate discount rate, and the terminal value…" *Id.*   As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

54.   With respect to Evercore's *Peer Group Trading* and *Precedent M&A Transactions* Analyses, the Proxy fails to disclose the individual multiples Evercore calculated for each company and transaction utilized. The omission of these multiples renders the summary of these analyses and the implied equity value reference ranges materially misleading.  A fair summary of companies and transactions analyses requires the disclosure of the individual

**CLASS ACTION COMPLAINT**

multiples for each company and transaction; merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.

55.     With respect to the *Background of the Merger*, the Proxy states that the form confidentiality agreement included a standstill provision, but fails to disclose whether such standstill provision contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect.[3] Such information is material to 8point3 Energy shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Partnership to offer them a better deal. The failure to disclose the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. That's not true. If those confidentiality agreements contained DADW provisions, they could only make a superior proposal by breaching the agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this information renders the descriptions of the confidentiality agreements the Partnership entered into materially incomplete and misleading.  Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

56.     Finally, the Proxy fails to adequately disclose the historical relationships of all three financial advisors involved in negotiating and executing the Proposed Transaction: Evercore, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"), and Goldman Sachs & Co. LLC ("Goldman Sachs" and, together with BofA Merrill Lynch, the

---

[3]     Similarly, the Partnership entered into revised confidentiality agreements with the Phase II bidders, and failed to disclose any of the terms of those agreements either.

**CLASS ACTION COMPLAINT**

"Sponsor Financial Advisors").

57.     The Proxy fails to disclose information regarding past dealings or a historical relationship between Evercore and 8point3 Energy. Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4). Such information is also material to 8point3 Energy shareholders. It is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders.

58.     The Proxy merely states "For each of the engagements described in this paragraph Evercore received fees and reimbursement of certain out-of-pocket expenses. Evercore may provide financial or other services to the Partnership in the future and in connection with any such services Evercore may receive compensation." Proxy at 62. It does not disclose how much compensation it received for those engagements or might be known to receive in the future. The omission of compensation details from Evercore's previous dealings or historical relationships with 8point3 Energy or its affiliates renders the Proxy and Evercore's fairness opinion materially incomplete and misleading, and in violation of 17 C.F.R. § 229.1015(b)(4).

59.     Additionally, the Proxy fails to disclose any historical relationship of either of the Sponsor Financial Advisors with any party to the Proposed Transaction. This information is material for the same reasons stated above. Moreover, if the either of the Sponsor Financial Advisors have a relationship with Capital Dynamics, then it could help explain the low share

price. When financial advisors face conflicts of interest in either negotiating or opining on fairness, shareholders must be made aware.

60.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R . § 240.14a-9 Promulgated Thereunder)

61.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

63.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

64.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

65.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015.

66.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information concerning: (i) financial projections for 8point3 Energy; (ii) the valuation analyses performed by Evercore in support of its fairness opinion; (iii) information relating to the Background of the Merger; and (iv) potential conflicts of interest faced by the financial advisors.

67.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make statements in the Proxy not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

68.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Evercore reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial

**CLASS ACTION COMPLAINT**

analyses provided by Evercore as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Partnership and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the Evercore's analyses in connection with their receipt of the fairness opinion, question Evercore as to the derivation of its fairness opinion, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

69.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Partnership's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Partnership's financial projections.

70.     8point3 Energy is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

71.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

72.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

73.      The Individual Defendants acted as controlling persons of 8point3 Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of 8point3 Energy, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

74.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

/ / /

/ / /

/ / /

/ / /

**CLASS ACTION COMPLAINT**

76.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

77.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

78.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

79.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Partnership discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: March 31, 2018

Respectfully submitted,

*/s/ David E. Bower*
David E. Bower

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**

Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT**